# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

CARLOS RAMOS-MACARIO,                )
                                     )
    Plaintiff,                    )
                                     )
v.                                   )    No. 3:10-00813
                                     )    JUDGE HAYNES
                                     )
TRUMAN JONES, et al.,                )
                                     )
    Defendants.                   )

## M E M O R A N D U M

Plaintiff, Carlos Ramos-Macario, filed this action under 42 U.S.C. § 1983 and the Tennessee

Governmental Tort Liability Act ("TGTLA"), Tenn. Code Ann. § 29-20-101 et seq., against the

Defendants Truman Jones, individually and in his official capacity as Rutherford County Sheriff,

Bob Asbury, individually and in his official capacity as Chief Deputy and Administrator of Detention

in the Rutherford County Sheriff's Department, Rutherford County, Tennessee,[1] and John Does 1-3.

Plaintiff's claims arise out of his arrest and detention in the Rutherford County jail. In essence,

Plaintiff asserts claims under the Fourth, Eighth and Fourteenth Amendment[2] rights for his unlawful

---

[1]Plaintiff names the Rutherford County Sheriff's Office in conjunction with Rutherford County, Tennessee as a Defendant. Claims against sheriff's departments are not actionable under federal law. Buchanan v. Williams, 434 F. Supp.2d 521, 529 (M.D. Tenn. 2006). Accordingly, any claims against the Rutherford County Sheriff's Office should be dismissed.

[2]Plaintiff also asserts Due Process violations under the Fifth Amendment in conjunction with the Fourteenth Amendment. However, "[t]he Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government." Bybee v. City of Paducah, 46 Fed.Appx. 735, 737 (6th Cir. 2002). Plaintiff does not assert any claims against the federal government. Accordingly, any claims for violation of the Fifth Amendment's Due Process Clause should be dismissed.

detention in jail after the expiration of his sentence and a claim for failure to train and supervise. Plaintiff also asserts state law claims for false imprisonment and negligence under TGTLA. Plaintiff brings this action as a class action.

Before the Court are Defendants' motions to dismiss and for summary judgment (Docket Entry Nos. 18-20), contending, in sum: (1) that the Court should not exercise supplemental jurisdiction over Plaintiff's state law claims; (2) that Plaintiff fails to show that Defendants had a custom or policy that was the moving force behind the alleged constitutional violations; (3) that the individual Defendants did not engage in any acts or omissions that establish liability under federal and state law; (4) that the individual Defendants are entitled to qualified immunity; (5) that Plaintiff's claims against the individual Defendants in their official capacities should be dismissed; (6) that the undisputed facts do not support Plaintiff's claims for deliberate indifference; and (7) that Plaintiff cannot meet the prerequisites as a class action under Fed. R. Civ. P. 23(a).

In response (Docket Entry Nos 33-35), Plaintiff asserts, in essence, that the Court should exercise supplemental jurisdiction over Plaintiff's state law claims and that genuine issues of material fact exist as to Plaintiff's federal claims and summary judgment would be inappropriate because the parties have not conducted even minimal discovery. Plaintiff agrees that this action is not suitable for class treatment.

For the reasons set forth below, the Court concludes that issues of material fact exist as to whether Rutherford County violated Plaintiff's constitutional rights, Plaintiff's federal and state law claims against Jones and Asbury should be dismissed and Plaintiff's state law claims against Rutherford County, except false imprisonment, should be dismissed.

## I. ANALYSIS OF MOTIONS

The parties have presented affidavits and other evidence in support and opposition to the motions to dismiss. In deciding a motion under 12(b)(6), if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). In such an instance, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Id. Yet, a court may consider certain documents without converting the motion to dismiss into one for summary judgment. "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." Bassett v. National Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008). "Courts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies." Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999) overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).

Under Sixth Circuit precedent, where the materials submitted by a party fall outside the pleadings, "a party cannot raise for the first time on appeal an argument that she was surprised by the conversion of the motion to dismiss into a motion for summary judgment when the party was aware that materials outside the pleading had been submitted to the court before the court granted the motion." Song v. City of Elyria, 985 F.2d 840, 842 (6th Cir.1993) (citing Wright v. Holbrook, 794 F.2d 1152, 1156 (6th Cir.1986)); Morton v. ICI Acrylics, Inc., 69 F. Supp.2d 1038, 1041 (W.D. Tenn. 1999) ("[W]here the plaintiff responds to the motion to dismiss by also relying on evidence outside the pleadings and by suggesting to the court that the motion be treated as one for summary judgment, no notice is necessary, and no surprise should result from the conversion.").

Defendants invite the Court to consider the affidavits of Jones, Asbury and JoAnne LeCroy as matters outside the pleading and treat their motions to dismiss as motions for summary judgment under Rule 56. Plaintiff submits his affidavit along with other documents in support of his claims in his amended complaint. Plaintiff also invites the Court to convert Defendants' motions to dismiss into motions for summary judgment. Because matters outside the pleadings have been submitted by the parties and the parties are aware of a possible conversion, the Court concludes that the affidavits and other documents attached to the parties' memoranda in support and opposition to Defendants' motions to dismiss do not fall within the pleadings for purposes of Fed. R. Civ. P. 12(b)(6) and Defendants' motions to dismiss should be converted to motions for summary judgment under Fed. R. Civ. P. 56.

## II. REVIEW OF THE RECORD[3]

On or around 4:00 a.m. on June 14, 2009, Smyrna Police arrested Plaintiff for driving on a suspended license and transported him to the Rutherford County Adult Detention Center ("RCADC"). (Docket Entry No. 17, Second Amended Complaint, at ¶ 15). At Plaintiff's hearing on June 18, 2009, the Smyrna Municipal Court judge sentenced Plaintiff to five days in jail, crediting him with four days served. Id. at ¶ 16. Plaintiff states that upon his return from his sentencing he showed an RCADC employee court papers regarding his probation terms and through a bilingual

---

[3]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As will be discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). Because material factual disputes exist, this section does not constitute a findings of fact under Fed. R. Civ. P. 56(d).

inmate told the RCADC employee that Plaintiff was given a suspended sentence. (Docket Entry No. 35, Exhibit A, Plaintiff Affidavit at ¶ 5). The RCADC employee informed Plaintiff that the Sheriff could not release him because of an immigration detainer. Id. at ¶¶ 5-6. According to Plaintiff, sometime between June 14, 2009, and June 19, 2009, an officer at RCADC reported Plaintiff's arrest and detention at the RCADC to the United States Immigration & Customs Enforcement ("ICE"), and an immigration detainer was placed on Plaintiff, pending his release from RCADC. (Docket Entry No. 17, Second Amended Complaint at ¶¶ 17-18).

JoAnne LeCroy, a corporal with the Rutherford County Sheriff's Department who has been assigned to RCADC's booking department since July 2002 and serves as the court liaison for the RCADC, oversees the coordination of interaction with the courts. (Docket Entry No. 23, LeCroy Affidavit at ¶¶ 2-4). LeCroy also inputs information into the RCADC computer regarding jail time for inmates and calculates the date that an inmate should be released. Id. According to LeCroy, on June 18, 2009, she received a mittimus from the Smyrna Municipal Court, directing that Plaintiff be confined until "legally discharged." Id. at ¶ 5. The mittimus reflects that Plaintiff was sentenced to six months with credit for four days time served, but the mittimus does not reflect that the six month sentence was suspended. Id., attachment thereto, Exhibit 1. LeCroy states that a Smyrna Police officer transported Plaintiff to and from the Smyrna Municipal Court and Rutherford County officers were not present at the court hearing on June 18, 2009. Id. at ¶¶ 5-7. LeCroy states that she did not believe or suspect that the description of the sentence on the mittimus was incorrect. Id. at ¶ 8.

Plaintiff, however, cites records provided by RCADC to the Department of Homeland Security ("DHS") regarding the length of his sentence. (Docket Entry No. 35, Exhibit F, Elliot

Ozment Declaration).[4]  A handwritten note on top of the Smyrna Municipal Court's mittimus states the municipal court's telephone number and the following: "Pled guilty [illegible] . . . 6 month suspended . . . probation credit 4 days . . . June 18, 2009." Id., Exhibits B and E.  Attached to the mittimus is a form entitled "Inmate Change Of Status" with a handwritten note in the upper left hand corner that reads: "4 day." Id., Exhibit C.

Plaintiff completed his sentence on June 19, 2009, a Friday.  (Docket Entry No. 17, Second Amended Complaint at ¶ 21).  Over approximately the next twenty-five days, Plaintiff asked several guards for guidance on challenging his detention.  (Docket Entry No. 35, Exhibit A, Plaintiff Affidavit at ¶ 7).  Plaintiff challenged his detention in writing on three occasions -- on or around July 12, 2009, on or around August 15, 2009 and on or around October 12, 2009. Id. at ¶¶ 11,13, 15. Each time Plaintiff received a written response stating "Immigration Hold." Id. at ¶¶ 12, 14, 16. According to Plaintiff, he was held on the ICE detainer until October 27, 2009, when ICE took him into custody.  (Docket Entry No. 17, Second Amended Complaint at ¶ 25).  After being processed, ICE released Plaintiff on his own recognizance.  Id.  Plaintiff was not charged with any crime between the completion of his sentence and his release to ICE on October 27, 2009, nor was he permitted to make bail or post bond during that same time. Id. at ¶¶ 23-24.

LeCroy states that after computing Plaintiff's credits for time served and good behavior, Plaintiff's sentence expired on October 27, 2009.  (Docket Entry No. 23, LeCroy Affidavit at ¶ 8). According to LeCroy, the RCADC detained Plaintiff until October 27, 2009, based upon the sentence reflected in the mittimus and not on the immigration detainer. Id. at ¶ 10.  LeCroy states

---

[4]Plaintiff's counsel obtained these records through a Freedom of Information Act request ("FOIA") from the Department of Homeland Security.  (Docket Entry No. 33, Exhibit F, Elliot Ozment Declaration at ¶¶ 3-4).

that she was unaware of any complaints or claims made by Plaintiff from June 18, 2009 to October 27, 2009 that he was being held longer than the Smyrna Municipal Court intended. Id. at ¶ 11.

Bob Asbury, the Jail Administrator for the Rutherford County Sheriff's Department, is responsible for overseeing RCADC's operations. (Docket Entry No. 21, Asbury Affidavit at ¶¶ 2-3). However, as Sheriff of Rutherford County, Truman Jones has the ultimate responsibility over RCADC's operations, although he is not involved in the day-to-day details of the facility's operations. (Docket Entry No. 22, Jones Affidavit at ¶¶ 3, 5). Defendants deny any knowledge as to the facts of Plaintiff's incarceration at RCADC, any decisions made with regard to Plaintiff's incarceration or any claims or complaints made by Plaintiff regarding his detention at RCADC. (Docket Entry No. 21, Asbury Affidavit at ¶ 5; Docket Entry No. 22, Jones Affidavit at ¶ 5). Defendants state that from June 18, 2009, to October 27, 2009, they did not direct, allow, condone or encourage RCADC employees or officers to hold inmates beyond the expiration of their sentence except in accordance with the law governing immigration detainers. Id. at ¶¶ 7, 9.

Plaintiff alleges that Defendants were aware of at least two instances where inmates were unlawfully detained after the expiration of their ICE detainers. (Docket Entry No. 17, Second Amended Complaint at ¶¶ 28, 32). Plaintiff specifically cites one instance where the Rutherford County Chancery Court granted the Writ of Habeas Corpus and ordered the release of Herlacio Palomo on June 6, 2007. Id. at ¶ 30, Exhibits C and D. In that action, Palomo was detained at the RCADC past the expiration of his ICE detainer. Id. Chancellor Robert Corlew suggested that the failure to release Palomo was due to:

> an administrative issue at the Sheriff's Department and it may be helpful to start some tickler anytime somebody comes into custody, that 48 hours later, either he

needs to be released or if there are those who are watching and are vigilant on behalf of an individual, they should anticipate a petition.

Id. at ¶ 34, Exhibit E at pp. 39-40.

According to Defendants Jones and Asbury, RCADC lack a policy or custom of detaining inmates for a period longer than allowed by federal law while waiting for transfer to immigration officers. (Docket Entry No. 21, Asbury Affidavit at ¶ 6; Docket Entry No. 22, Jones Affidavit at ¶ 6). Defendants state that following the release of Heracilo Palomo, they directed RCADC officers to review and change their practices to avoid a future occurrence. Id. Defendants are unaware of similar problems occurring since Palomo's release. Id. Defendants state that they are unaware of any deficiencies in policies or procedures or in training or supervision that resulted in Plaintiff's detention beyond the date intended by the Smyrna Municipal Court. Id. at ¶ 9. Further, Defendants delegated the responsibility for overseeing the adoption and enforcement of policies and procedures and the provision of training and supervision to officers at the RCADC. Id.

LeCroy states that she and other RCADC officers regularly receive training and that Plaintiff's detention was due to an error in the Smyrna Municipal Court's mittimus and not because of a lack of training or a failure in policy. (Docket Entry No. 23, LeCroy Affidavit at ¶¶ 15-16). According to LeCroy, she was supervised by Lt. Bo Alexander and other superior officers between June 18, 2009 and October 27, 2009. Id. at ¶ 17. LeCroy also supervised other officers at the RCADC. Id.

### III. CONCLUSIONS OF LAW

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes

on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*, so long as the opposing party was on notice that [he] had to come forward with all of [his] evidence." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986); <u>accord, Routman v. Automatic Data Processing, Inc.</u>, 873 F.2d 970, 971 (6th Cir. 1989).

In <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986), the United States Supreme Court explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." By its very terms, this standard provides that the mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.</u> Factual disputes that are irrelevant or unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no `genuine issue for trial.'" <u>Matsushita Electrical Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery. <u>Celotex</u>, 477 U.S. at 326 (1986). Where there has been a reasonable opportunity for discovery, the party opposing the motion must make an affirmative showing of the need for additional discovery after the filing of a motion for summary judgment. <u>Emmons v. McLaughlin</u>, 874 F.2d 351, 355-57

9

(6th Cir. 1989). But see Routman v. Automatic Data Processing, Inc., 873 F.2d 970, 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required showing of the respective parties, as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. . . . [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule 56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's burden is to show "clearly and convincingly" the absence of any genuine issues of material fact. Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons, 874 F.2d at 353 (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the United States Court of Appeals for the Sixth Circuit warned that "the respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty Lobby). Moreover, the Court of Appeals explained that:

The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'") (quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

More important for present purposes, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.

. . . .

Progressing to the specific issue in this case, we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict -- "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

11

> In ruling on [a] motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establish a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).
>
> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This notice can be adequately accomplished through a local court rule or a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). Here, the parties have given some references to the proof upon which they rely. Local Rules 56.01(b)-(d) require a showing of undisputed and disputed facts.

In <u>Street</u>, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and other authorities on summary judgment and synthesized ten rules in the "new era" on summary judgment motions:

1.  Complex cases are not necessarily inappropriate for summary judgment.

2.  Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3.  The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4.  This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5.  A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

6.  As on federal directed verdict motions, the "scintilla rule" applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.

7.  The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8.  The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9.  The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial

court has at least some discretion to determine whether the respondent's claim is "implausible."

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

Section 1983 provides a remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution. There are two essential elements to an action under § 1983: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986); 42 U.S.C. § 1983.

As a threshold matter, the Court notes that in addition to Rutherford County Plaintiff has sued Jones and Asbury in their official capacities, which is in essence a suit against Rutherford County, of which they are agents. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official

personally, for the real party in interest is the entity." Id. at 166 (citation omitted) (emphasis in original). Thus, the Court concludes that naming Jones and Asbury in their official capacities is duplicative and they should be dismissed in their official capacities.

Moreover, Plaintiff asserts a failure to train claim against Jones and Asbury. However, liability for failure to train "attaches to a municipality rather than to an individual." Caldwell v. Moore, 968 F.2d 595, 600 (6th Cir. 1992). Thus, the Court will discuss Plaintiff's failure to train claim in its discussion of Plaintiff's claims against Rutherford County.

### A. Rutherford County[5]

Unlike states, municipalities are persons who may be liable under § 1983 for their illegal acts or those of their employees, but only under certain conditions, where:

> [the employee's] action . . . implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers[;]
>
> . . .
>
> [There is] official municipal policy of some nature[; or]
>
> . . .
>
> [The] execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy . . . .

Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690, 691, 694 (1978).

A municipality is subject to liability for "only [those] deprivations [that are] visited pursuant to municipal 'custom' or 'policy'" under § 1983. Okla. City v. Tuttle, 471 U.S. 808, 818 (1985). As to the quantum of proof required to establish liability of local governmental units under Monell, the plurality opinion of four Justices in Tuttle stated:

---

[5]The Court will refer to each Defendant collectively as "Defendants."

> Proof of a single incident of unconstitutional activity is not sufficient to impose liability under <u>Monell</u>, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved. But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the "policy" and the constitutional deprivation.

<u>Id</u>. at 823-24 (footnote omitted).

An isolated act of any employee also does not establish a policy. <u>Sargi v. Kent City Bd. of Educ.</u> 70 F.3d 907, 912 (6th Cir. 1995). However, a city or local governmental entity may be held liable in actions brought against its employees in the employee's official capacity when it has notice of the action. <u>Brandon v. Holt</u>, 469 U.S. 464, 471-72 (1985). In a word, "official capacity claims [against municipal employees] are essentially claims against the entity itself." <u>Frost v. Hawkins County Bd. of Educ.</u>, 851 F.2d 822, 827 (6th Cir.1988). In such municipal official capacity suits, the § 1983 plaintiff "in order to recover, must meet the standards of liability established by <u>Monell</u>." <u>Collins v. City of Detroit</u>, 780 F.2d 583, 584 (6th Cir. 1986) (citing <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985)).

A claim against a municipality requires proof of "(1) the existence of an unconstitutional policy, (2) the connection of the policy to the municipality itself, and (3) a causal link between the unconstitutional policy and the particular injury alleged." <u>Robertson v. Johnson County</u>, 896 F. Supp. 673, 682 (E.D. Ky. 1995); <u>accord</u> <u>Foster v. City of Cleveland Heights</u>, 81 F.3d 160, No. 95-3591, 1996 WL 132181, at *1 (6th Cir. March 21, 1996) ("When a § 1983 claim is made against a municipality, two issues must be analyzed: (1) whether the plaintiff's harm was caused by a

constitutional violation, and (2) if so, whether the city is responsible for that violation.") (citing Collins v. City of Harker Heights, Tex., 503 U.S. 115, 120 (1992)).

Moreover, a prerequisite for municipal liability is that the officer's predicate acts must have violated the § 1983 plaintiff's federal rights.  In City of Los Angeles v. Heller, 475 U.S. 796 (1986), the Supreme Court upheld the dismissal of a city and its police commission stating that:  "If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point."  Id. at 799 (emphasis in original).  In Hancock v. Dodson, 958 F.2d 1367, 1376 (6th Cir. 1992), the Court also observed that "[b]ecause the only city police officer present committed no constitutional violation, the city cannot be liable for failure to train its police officers."

In Barber v. City of Salem, 953 F.2d 232, 235-36 (6th Cir. 1992), the Court distilled the City of Canton standard as follows:

> Furthermore, a municipality may also be liable under 42 U.S.C. § 1983 in certain circumstances for constitutional violations arising from its failure to properly train its employees.  In order for a plaintiff to prevail against a municipality, the plaintiff must show that inadequate training represented a city policy and that the need for better training was so obvious and the inadequacy so likely to result in a violation of constitutional rights, that the municipality can be said to have been deliberately indifferent to the need.

953 F.2d at 235-36 (citing City of Canton v. Harris, 489 U.S. 378, 388-90 (1989)); Sagan v. Sumner County Board of Educ., 726 F. Supp.2d 868, 886 (M.D. Tenn. 2010) ("Liability based on failure to train or supervise will exist only if a plaintiff can prove that a municipality's failure to train its employees in a relevant respect 'reflects deliberate indifference to the constitutional rights of its inhabitants.'") (citation omitted).

Defendants contend that Plaintiff fails to show that a custom or policy was the moving force behind the alleged constitutional violations as Plaintiff was detained pursuant to the Smyrna Municipal Court's mittimus and that the affidavits submitted by Defendants establish that Defendants did not have a custom or policy of detaining inmates on immigration detainers beyond the time allowed by federal law. Plaintiff contends that genuine issues of material fact exist as to whether Defendants were on notice that the mittimus was erroneous, but Defendants continued to detain Plaintiff due to their ICE detainer policy.

ICE detainers are issued pursuant to 8 C.F.R. § 287.7 that provides:

> Any authorized immigration officer may at any time issue a Form I-247, Immigration Detainer-Notice of Action, to any other Federal, State, or local law enforcement agency. A detainer serves to advise another law enforcement agency that the Department seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien. The detainer is a request that such agency advise the Department, prior to release of the alien, in order for the Department to arrange to assume custody, in situations when gaining immediate physical custody is either impracticable or impossible.

8 C.F.R. § 287.7(a). This regulation further provides that "such agency shall maintain custody of the alien for a period not to exceed 48 hours, excluding Saturdays, Sundays, and holidays in order to permit assumption of custody by the Department." 8 C.F.R. § 287.7(d).

Plaintiff's affidavit establishes that he challenged his detention both orally and in writing and that he was informed that he was being detained pursuant to an immigration detainer, directly contradicting LeCroy's affidavit that Plaintiff's detention was based upon the Smyrna Municipal Court's mittimus, not on the immigration detainer, and that LeCroy was unaware of any complaints or claims made by Plaintiff regarding his detention. Further, Plaintiff establishes an issue of fact as to whether RCADC officers knew that Plaintiff's sentence was suspended given the handwritten

notation on the mittimus submitted by Plaintiff indicating that Plaintiff's six month sentence was suspended with a credit of four days served. Construing the facts in the light most favorable to the plaintiff, the Court concludes that Plaintiff has presented sufficient evidence establishing that a genuine issue of fact exists that Plaintiff was unconstitutionally detained pursuant to Defendants' alleged immigration detainer custom, policy or practice.

Plaintiff also submits evidence of past instances where inmates were unlawfully detained after the expiration of their ICE detainers. Chancellor Corlew suggested that certain steps should be implemented to prevent a reoccurrence. Defendants Jones and Asbury state that they directed RCADC officers to review and change their practices to avoid a future occurrence and that they delegated the responsibility of training and supervision to officers at the RCADC. "[F]inal policymaking authority may be delegated." Miller v. Calhoun County, 408 F.3d 803, 814 (6th Cir. 2005) (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986)). Defendants do not provide any details as to the policies implemented or training and supervising protocols. The Court cannot resolve this issue based upon the disputed facts and the record before the Court at this stage of proceedings.

Accordingly, Defendants' motions should be denied as to Plaintiff's federal law claims against Rutherford County.

**B. Truman Jones and Bob Asbury in Their Individual Capacities**

Plaintiff does not allege any specific personal involvement by Jones or Asbury in violating his constitutional rights nor do the undisputed facts reveal that these Defendants were personally involved in any of the wrongful activity.

In asserting a § 1983 action against a supervisory official, a plaintiff must show that the defendant was either directly or personally involved in the alleged unconstitutional activity. <u>Dunn v. State of Tennessee</u>, 697 F.2d 121, 128 (6th Cir. 1982). "What is required is a causal connection between the misconduct complained of and the official sued." <u>Id</u>. Liability under § 1983 must be based on more than *respondeat superior* or the right to control employees. <u>Shehee v. Luttrell</u>, 199 F.3d 295, 300 (6th Cir. 1999).

> [A] supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

<u>Id</u>. at 300 (citations omitted).

Plaintiff does not present any evidence that these Defendants had any direct or personal involvement in authorizing, approving, or knowingly acquiescing in any alleged unconstitutional conduct. Nor is there anything in the record that indicates otherwise. Defendants state that they delegated the responsibility for overseeing the adoption and enforcement of policies and procedures and the provision of training and supervision to officers at the RCADC. <u>Miller</u>, <u>supra</u>. In his responses, Plaintiff argues, in essence, that the alleged constitutional violations were based upon Defendants' ICE detainer *policies, practices and customs*, not that Jones and Asbury were either directly or personally involved in the alleged unconstitutional activity.

Accordingly, the Court concludes that the federal claims against Jones and Asbury in their individual capacities should be dismissed.

### C. State Law Claims

Plaintiff asserts state law claims of false imprisonment and negligence against the Defendants. Plaintiff also asserts that Jones and Asbury "negligently supervised other Defendants by failing to provide proper training and supervision and failing to implement adequate systems to provide for" Plaintiff's timely release. (Docket Entry No. 17, at ¶ 74).

Under the "Supplemental Jurisdiction" statute, 28 U.S.C. § 1367, the Court acquires jurisdiction over state law claims in § 1983 complaints. Title 28 U.S.C. § 1367 consolidates the former pendent and ancillary jurisdiction doctrines into a single "supplemental jurisdiction" concept. The statute, in essence, codifies the "common nucleus of operative fact" standard in United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). Title 28 U.S.C. § 1367(a) allows supplemental jurisdiction under the Gibbs test, but not in diversity jurisdiction actions. A district court is not required to entertain jurisdiction over these supplemental claims, particularly where it "has dismissed all claims over which it has original jurisdiction," or "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(3)-(4).

Defendants argue that the Court should decline supplemental jurisdiction on the grounds that the Tennessee Governmental Tort Liability Act ("TGTLA"), Tenn. Code. Ann. §§ 29-20-101 et seq., forecloses review of these claims by the Court. TGTLA grants immunity to state governmental entities and their employees from suits based in negligence, but not for intentional torts such as "false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights[.]" Tenn. Code. Ann. §§ 29-20-201, -205(2). For any action brought under TGTLA, the Tennessee circuit courts are granted "exclusive original jurisdiction over any [such] action . . . ." Tenn. Code. Ann. § 29-20-307.

As to Plaintiff's negligence claims against Rutherford County, the Court concludes that these claims qualify under TGTLA and should be heard by the a state court. The Court considers this to be an "exceptional circumstance" that compels the Court to decline supplemental jurisdiction over Plaintiff's state law claims for the reasons stated in <u>Beddingfield v. City of Pulaski</u>, 666 F.Supp. 1064 (M.D. Tenn. 1987), <u>rev'd</u> *on other grounds* 861 F.2d 968 (6th Cir. 1988). The <u>Beddingfield</u> ruling on declination to entertain TGTLA claims retains its viability. <u>Gregory v. Shelby County, Tennessee</u>, 220 F.3d 433, 446 (6th Cir. 2000); <u>Fromuth v. Metropolitan Gov't. of Nashville</u>, 158 F.Supp.2d 787, 789 (M.D. Tenn. 2001); <u>Spurlock v. Whitley</u>, 971 F.Supp. 1166, 1185 (M.D. Tenn. 1997) *aff'd sub. nom* <u>Spurlock v. Satterfield</u>, 167 F.3d 995 (6th Cir. 1999).

Yet, TGTLA's jurisdictional limitations "do not apply to persons sued individually." <u>Timberlake v. Benton</u>, 786 F. Supp. 676, 697 (M.D. Tenn. 1992). However, "[w]here the TGTLA specifically removes immunity of a governmental entity for certain negligent acts and omissions, courts have held that the governmental employee may not be sued individually for the same tort pursuant to Tenn. Code Ann. § 29-20-310(b)." <u>Arbuckle v. City of Chattanooga</u>, 696 F. Supp.2d 907, 929 (E.D. Tenn. 2010). Here, Jones and Asbury would be immune from liability from Plaintiff's individual claims for negligence and false imprisonment under Tenn. Code. Ann. §§ 29-20-310(b) and 29-20-205. Rutherford County is not immune from these torts under § 29-20-205, and § 29-20-310(b) states that "[n]o claim may be brought against an employee . . . for which the immunity of the governmental entity is removed." Therefore, the Court concludes that these claims against Jones and Asbury should be dismissed without prejudice. <u>Id</u>. at 929-30.

As to Plaintiff's false imprisonment claim against Rutherford County, TGTLA does not apply because TGTLA does not waive a county's state law immunity for false imprisonment. Tenn. Code

Ann. § 29-20-205(2). While Defendants have presented evidence of a mittimus, Plaintiff has presented evidence that Plaintiff was detained as a result of an unlawful immigration detainer, not a mittimus. Thus, Plaintiff's false imprisonment claim remains the only viable state law claim in a federal forum and should therefore proceed before this Court under its supplemental jurisdiction.

Defendants seek the Court to enter final judgment in favor of Jones and Asbury under Fed. R. Civ. P. 54(b). Rule 54(b) of the Federal Rules of Civil Procedure states:

> When an action presents more than one claim for relief--whether as a claim, counterclaim, crossclaim, or third-party claim--or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' right and liabilities.

Fed. R. Civ. P. 54(b).

Entry of final judgment under Rule 54(b) requires two independent findings: that there is a final judgment "as to one or more, but fewer than all, claims or parties" and that the district court "expressly determine[d] that there is no just reason for delay." General Acquisition, Inc. v. GenCorp, Inc., 23 F.3d 1022, 1026 (6th Cir. 1994) (citing Fed. R. Civ. P. 54(b)). The final judgment "must be a 'judgment' in the sense that it is a decision upon a cognizable claim for relief, and it must be 'final' in the sense that it is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" Id. at 1027 (quoting Curtiss-Wright Corp. v. General Elec. Co., 446 U.S. 1, 7 (1980)). As to a determination of no just reason for delay, the district court must balance the needs of the parties against the interests of efficient case management. Id. however, "'[n]ot all final judgments on individual claims should be immediately appealable, even if they are in some

sense separable from the remaining unresolved claims.'" Id. (quoting Curtiss-Wright, 446 U.S. at 8.

A nonexhaustive list of factors that a district court should consider when making a Rule 54(b) determination is as follows:

> (1) the relationship between the adjudicated claim and the unadjudicated claims; (2) the possibility that the need for review might or might not be mooted by future developments in the district court; (3) the possibility that the reviewing court might be obligated to consider the same issue a second time; (4) the presence or absence of a claim or counterclaim which could result in set-off against the judgment sought to be made final; (5) miscellaneous factors such as delay, economic and solvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. Depending upon the facts of the particular case, all or some of the above factors may bear upon the propriety of the trial court's discretion in certifying a judgment as final under Rule 54(b).

Corrosioneering, Inc. v. Thyssen Environmental Systems, Inc., 807 F.2d 1279, 1283 (6th Cir.1986).

Ultimately, a district court has "sound judicial discretion" "to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal. This discretion is to be exercised 'in the interest of sound judicial administration.'" Curtiss-Wright, 446 U.S. at 8 (citation omitted).

Here, Plaintiff asserts that he was unaware of a mittimus throughout his detention and in light of Defendants submitting the mittimus in support of their motions, Plaintiff intends to seek leave of the Court to amend his complaint and assert a claim against Jones and Asbury for false imprisonment pursuant to a mittimus from a court. Defendants Jones and Asbury are not immune from suit under TGTLA as governmental entities retain immunity for this tort. Tenn. Code. § 29-20-205(2). Therefore, the Court concludes that Defendants' request for entry of judgment under Rule 54(b) should be denied.

For these reasons, the Court concludes that Plaintiff's federal claims against Jones and Asbury in their individual and official capacities should be dismissed. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims of negligence against the Defendants because the exclusive jurisdiction of TGTLA is an "exceptional circumstance" that is a "compelling reason for declining jurisdiction." For the same reason, the Court declines to exercise supplemental jurisdiction over Plaintiff's false imprisonment claim against Jones and Asbury. Defendants' motions to dismiss/for summary judgment (Docket Entry Nos. 18-20) are otherwise denied.

An appropriate Order is filed herewith.

**ENTERED** this the 2d day of March, 2011.

WILLIAM J. HAYNES, JR.
United States District Judge